UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
JUDGE

# LETTER OPINION

January 20, 2012

Karl Allan Kazmierczak
Kazmierczak & Kazmierczak, LLP
593 Ramapo Valley Road
Oakland, NJ 07436
*(Attorney for Plaintiff)*

Andreea Lechleitner
Special Assistant United States Attorney
c/o Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
*(Attorney for Commissioner of Social Security)*

RE: *Carpenter v. Comm'r of Soc. Sec.*
Civil Action No. 10-5762

Dear Counsel:

Petitioner George Carpenter brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). There was no oral argument. *See* Fed. R. Civ. P. 78. For the following reasons, the Commissioner's decision is **AFFIRMED**.

## I. Standard of Review and the Social Security Legal Framework

This Court has plenary review of the Administrative Law Judge's ("ALJ") application of the law. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d

429, 431 (3d Cir. 1999). When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing 42 U.S. § 405(g)).

At the administrative level, a five-step process is used to determine whether an applicant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. At Step One, the ALJ determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, the ALJ moves to Step Two to determine if the claimant's alleged impairments qualify as "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment or impairments, the ALJ inquires at Step Three as to whether the impairment or impairments meet or equal the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits and the analysis ends; if not, the ALJ moves on to Step Four. 20 C.F.R. §§ 404.1520(d), 416.920(d). At Step Four, the ALJ decides whether, despite any severe impairment(s), the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At Step Five, the burden shifts to the Commissioner to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec. Admin.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

## II. Factual and Procedural Background

Mr. Carpenter applied for a period of disability and DIB on November 15, 2005. Mr. Carpenter claims that he is entitled to DIB for the period between December 14, 2000 and December 31, 2006 because of back pain, diabetes, hypertension, and post-traumatic stress disorder ("PTSD"). He also appears to have problems arising from chronic substance abuse. His claim was initially denied on January 26, 2006, and again upon reconsideration on March 20, 2006. His first ALJ hearing occurred on September 17, 2007 and resulted in a determination that he was not disabled. Mr. Carpenter appealed that decision, and the Appeals Council remanded the case for supplemental hearing. On March 5, 2009, a second ALJ hearing occurred, resulting in a March 30, 2009 decision again finding that Mr. Carpenter was not disabled. In that decision, the ALJ recognized that Mr. Carpenter had certain impairments but also found that Mr. Carpenter had the residual functional capacity ("RFC") to perform light work activity limited to simple, routine, repetitive job tasks in a low stress work environment with certain

other social and environmental limitations. The Appeal's Council denied Mr. Carpenter's request for review, and he filed this action.

Mr. Carpenter claims that the ALJ's findings regarding his RFC as explained in the March 30, 2009 decision are not supported by substantial evidence for several reasons discussed below. Mr. Carpenter raises no other issues regarding any of the ALJ's findings in the other portions of the decision.

## III. Legal Analysis

### A. The ALJ Adequately Reviewed the Record Evidence.

In addition to certain specific issues he raises and that are discussed in detail below, Mr. Carpenter implies generally that the ALJ's RFC findings were insufficiently supported and based on an incomplete review of the medical evidence. Mr. Carpenter mischaracterizes the ALJ's decision as relying chiefly on the testimony of Dr. Phyllis Anderson-Wright, a consultative osteopathic physician who examined the claimant at the Social Security Administration's request, to the exclusion of other medical evidence.

Contrary to those assertions, the ALJ's decision as it pertains to Mr. Carpenter's RFC is thorough, exhaustive, and more than sufficient to permit the Court to conduct a meaningful review. *See Burnett v. Commissioner of Soc. Sec. Admin.*, 220 F.3d 112, 119-20 (3d Cir. 2000). The ALJ reviewed Mr. Carpenter's extensive medical records from the Veterans Administration clinic: "the inpatient and outpatient Veterans Administration clinic records provide a good longitudinal history and view of the claimant's diagnosed and treated medical impairments from May 3, 2004 to November 29, 2005." (Tr. 15.) The ALJ's decision incorporates details of Mr. Carpenter's medical history, as documented by those records, at length and throughout his RFC assessment. (*See* Tr. 15-17.) The ALJ also considered the results of an MRI of Mr. Carpenter's spine performed on October 3, 2007. (Tr. 15.) And the ALJ considered the opinions of other medical professionals besides Dr. Anderson-Wright. He considered an RFC assessment completed by Dr. David Schneider for the State of New Jersey, Department of Labor, Division of Disability Determination Services (the "NJDDS") – which found Mr. Carpenter able to engage in medium-level work activity. (Tr. 16.) He also explicitly considered the psychiatric evaluation conducted by Dr. Pradip Gupta, again on behalf of the NJDDS, and the opinion of Thomas Harding. Ph. D., an NJDDS psychologist who reviewed record medical evidence regarding Mr. Carpenter's psychological and mental capabilities. (Tr. 16-17.) Throughout the decision, the ALJ indicates both the evidence he accepts and the evidence he rejects and provides reasons for discounting such evidence. *See Burnett*, 220 F.3d

at 121.

Mr. Carpenter maintains that the ALJ's RFC findings are unsupportable in light of Mr. Carpenter's extended hospitalization, lasting from October 1, 2005 until November 10, 2005, and the opinion at discharge given by Karen Opdyke, a staff psychiatrist at the Veterans Administration hospital where Mr. Carpenter was hospitalized. But the ALJ adequately discusses his reasons for discounting Dr. Opdyke's opinion:

> I note that the claimant was hospitalized in a Veterans Administration Hospital, from October 1, 2005 to November 10, 2005, for treatment of the symptoms of a chronic post-traumatic stress disorder related to combat trauma. He underwent and completed an inpatient residential rehabilitation program. On discharge, he was described as "presently unemployable" (exhibit 2F). However, that opinion does not stand for the proposition that the claimant has been "unemployable" and "disabled" by virtue of his mental impairments continuously since November 10, 2005, because the consultative psychiatric examination, by Dr. Gupta, shortly thereafter on January 14, 2006, showed that the claimant was able to complete serial sevens (7's) exercises, and he was able to follow three-step commands adequately (exhibit 4F). Thus, the examination by Dr. Gupta renders the opinion by the claimant's treating Veterans Administration Hospital medical sources applicable and limited only to the date of his discharge from the hospital.

(Tr. 17.) The ALJ has committed no error; he has reviewed the medical evidence and given his reasons, supported by other substantial medical evidence, for limiting the opinion of Dr. Opdyke in favor of the opinions of the other medical professionals. *See Diaz v. Commissioner of Soc. Sec.*, 577 F.3d 500, 505-06 (3d Cir. 2009) (holding ALJ is free to choose one medical opinion over another where ALJ considers all evidence and give some reason for discounting certain evidence). Nor is the ALJ's decision to limit Dr. Opdyke's opinion inconsistent with the medical record taken as a whole, which supports the finding that Mr. Carpenter can engage in some limited, low-stress work, despite his moderate social and psychological impairments.

B. The ALJ's Reliance on the Opinion of the Consultative Examiner Dr. Anderson-Wright Was Not Erroneous.

Mr. Carpenter argues that the ALJ's reliance on Dr. Anderson-Wright's opinion was improper because: (1) she allegedly did not review his medical records from the Veterans Administration in their entirety; and (2) her opinion was

otherwise inconsistent with the record as a whole. Both arguments fail.

Mr. Carpenter presents no legal support for his position that an ALJ may not rely on the opinion of a consultative examiner who has not explicitly reviewed a claimant's entire medical history. In fact, it is up to the ALJ to determine how much weight to give a medical opinion, using such factors as the consultant's medical specialty, the supporting evidence in the record, the consultant's explanations, and other factors relevant to weighing opinions. *See*, *e.g.*, *Andrews v. Astrue*, No. 10-4932, 2011 WL 6756967, at *12 (D.N.J. Dec. 21, 2011) (citing 20 C.F.R. § 404.1527(f)(2)(ii)). Here, Dr. Anderson-Wright, a qualified Doctor of Osteopathy, conducted a physical examination of Mr. Carpenter to assess his physical functional capacity. (Tr. 15-16.) As detailed both in her report and the ALJ's decision, Dr. Anderson-Wright made specific, objective findings of straightforward medical facts regarding Mr. Carpenter, such as his blood sugar level, the absence of certain diabetes-related complications, his blood pressure, his ability to ambulate, his lung function, and his full range of spinal motion. (Tr. 15-16.) Given Dr. Anderson-Wright's expertise and the easily quantifiable nature of her findings, the ALJ had sufficient reason to accord her evaluation considerable weight in assessing Mr. Carpenter's physical capacities.

And review of the ALJ's decision reveals that the ALJ considered Dr. Anderson-Wright's Opinion to be consistent with the record as a whole. For example, the ALJ explicitly based his decision that Mr. Carpenter's back pain presented no physical functional limitations on "evaluation at the Veterans Administration outpatient clinic and a recent consultative physical examination by Dr. [Anderson-]Wright" both of which established that, among other things, Mr. Carpenter was ambulatory, did not rely on "any potent and potentially addictive narcotic-opiod analgesic medications", and engaged activities such as bowling. (Tr. 16.) Other than the conflict with Dr. Opdyke, Mr. Carpenter points to no other ways in which Dr. Anderson-Wright's opinion is inconsistent with other record evidence.

### C. The ALJ's Failure to Specifically Mention Mr. Carpenter's Global Assessment of Functioning Scores Was Not Erroneous.

Finally, Mr. Carpenter claims that the ALJ failed to consider two low Global Assessment of Functioning ("GAF")[1] scores in assessing Mr. Carpenter's RFC.

[1] The GAF scale is used by some psychiatrists to assess psychological, social, and occupational functioning of adults; the Social Security Administration does not require the consideration of GAF scores in assessing disability. *See* 65 Fed. Reg. 50746, 50764-65 (declining to adopt comment recommending use of GAF scores and noting "[t]he GAF scale, which is described in the DSM–III–R (and the DSM–IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings.").

While Mr. Carpenter is generally correct that an ALJ's failure to address a GAF score below a certain threshold *may* be cause for remand, *see, e.g.*, *Irizarry v. Barnhart*, 233 F. App'x 189, 192 (3d Cir. 2007) (ordering remand where ALJ discussed GAF scores of 55 in support of a finding lack of disability but failed to address lower GAF scores), the ALJ is under no obligation to make explicit reference to GAF scores provided that the ALJ clearly addresses the opinion or medical evidence in which the GAF score is found. *See Gilroy v. Astrue*, 351 F. App'x 714, 717 (3d Cir. 2009) (finding ALJ's opinion was supported by substantial evidence and noting that while ALJ's decision "did not make explicit reference to Dr. Wang's one-time rating of GAF 45, it did make repeated references to observations from Dr. Wang's reports."). Thus, the measuring stick is the same as the one discussed above: did the ALJ consider all the medical evidence, and, in doing so, did the ALJ explain his reasons for discounting certain evidence?

The answer in this case is a clear "yes." Mr. Carpenter claims that the ALJ failed to consider the GAF score of 45 that he received from Dr. Opdyke after his discharge in November 2005. But the ALJ explicitly addresses Dr. Opdyke's findings and his reasons for discounting them in light of later psychological evaluation, as discussed at length above. Thus, as in *Gilroy*, the ALJ's failure to explicitly mention the GAF score is not cause for remand.

And while Mr. Carpenter claims he received a second GAF score of 41 in April 2006 – another score that does not appear in the ALJ's decision – he fails to cite to anything in the record substantiating that claim. The Commissioner's brief claims that counsel was unable to find any record of this score. And on its own review of the record, the Court was unable to find any record of the score. In light of this, the ALJ's failure to mention the specific score is not an error, because it appears that the score was not in evidence before the ALJ. *Morrison v. Astrue*, 355 F. App'x 599, 602 (3d Cir. 2009) ("Evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence.").

## IV. Conclusion

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. An appropriate Order follows.

/s/ William J. Martini

**WILLIAM J. MARTINI, U.S.D.J.**